**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**BENTON DIVISION**

DR. RICHARD L. THALMAN                     )
doing business as THALMAN                  )
CHIROPRACTIC & WELLNESS CENTER,            )
on behalf of Plaintiff and                 )
the class members defined herein,          )
                                           )
                     Plaintiff,            )
                                           )          3:21-cv-00543
          v.                               )
                                           )
FIRST HOSPITAL LABORATORIES, INC.,         )
d/b/a FSSolutions,                         )
and JOHN DOES 1-10,                        )
                                           )
                     Defendants.           )

## COMPLAINT  – CLASS ACTION

## MATTERS COMMON TO MULTIPLE COUNTS

### INTRODUCTION

1.        Plaintiff Dr. Richard Thalman doing business as Thalman Chiropractic and Wellness Center ("Thalman"), brings this action to secure redress for the actions of Defendants First Hospital Laboratories, Inc., d/b/a FSSolutions ("FSSolutions") and John Does 1-10, in sending or causing the sending of unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"),  the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and the common law.

2.        The TCPA expressly prohibits unsolicited fax advertising.  Unsolicited fax advertising damages the recipients.  The recipient is deprived of its paper and ink or toner and the use of its fax machine.  The recipient also wastes valuable time it would have spent on something else.  Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

1

## PARTIES

3.      Plaintiff Thalman has offices in Carbondale, Illinois, where he maintains a telephone facsimile machine that automatically prints faxes using paper and ink/ toner.

4.      Defendant  FSSolutions  is a corporation chartered under Virginia law with offices at 100 Highpoint Drive, Chalfont, PA 18914 and  240 Corporate Blvd., Norfolk, VA 23502-4900.

5.      John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below.  Plaintiff does not know who they are.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. §§1331 and 1367.    *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 132 S. Ct. 740, 751-53 (2012);  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446  (7th Cir. 2005).

7.      Personal jurisdiction exists under 735 ILCS 5/2-209, in that Defendants (a) have committed tortious acts in Illinois by causing the transmission of unlawful communications into the state and (b) have transacted business in Illinois.

8.      Venue in this District is proper for the same reason.

## FACTS

9.      Under the American Recovery and Reinvestment Act of 2009, all Personal Health Information ("PHI") communications must be secure, and therefore doctors use their fax machines to transmit PHI as part of their business rather than email or other means which are less secure.

10.      On May 27, 2021 Plaintiff Thalman received the unsolicited fax advertisement attached as Exhibit A on his facsimile machine.

11.      On June 2, 2021 Plaintiff Thalman received the unsolicited fax advertisement attached as Exhibit B on his facsimile machine.

12.      The faxes state that they were sent by a "Procurement Associate" with FSSolutions.

13.      Defendant  FSSolutions provides background check and employment and medical

screening and monitoring services on a nationwide basis.

14.     As part of such services FSSolutions conducts drug, alcohol, medical and other
testing of prospective employees and others.

15.     FSSolutions states on its web site (https://www.fssolutions.com/about/) that:

a.      It "is currently a leading workforce and employment screening company in
the United States,"

b.      It "is one of the largest privately held third-party administrators (TPA) of
drug and alcohol testing programs in the country. We have more than 30
years of experience in helping clients design and manage their testing
programs, monitor their professionals, make their employees more
productive, and reduce operating expenses and risks. All of our programs are
operated in accordance with requirements of the governing body and/or
with federal, state, and municipal regulations. Our mission is to be the
foremost experts on compliance and monitoring issues, and we pass on our
expertise by offering legal services, expert consultation, and training."

c.      "Since our founding, FSSolutions has provided workforce employment
screening services, continuously evolving to meet the needs of our diverse
client base, which includes Fortune 500 companies, law enforcement
agencies, state and municipal governments, staffing companies, state
licensing boards, and treatment facilities."

d.      "In 1999, we created our recovery monitoring services (RMS) program for
licensed professionals. We crafted it to offer a customized menu of services,
test panels, and payment options that meet the unique needs of different
industry and state monitoring programs. In 2008, FSSolutions acquired
National Confederation of Professional Services, Inc. (NCPS), of Newport
News, Virginia. This acquisition made FSSolutions the largest administrator

3

of professional health monitoring services in North America, with clients nationwide."

16.     FS Solutions also states on its web site (https://www.fssolutions.com/providers/): "With over 15,000 locations, FSSolutions has the largest collection site & provider network in the industry. We continue to expand our network by forging new partnerships every day. That way, no matter where you are, a site is never far away."

17.     In order for Defendant's business model to work, it needs to enter into business relationships with medical providers in the areas from which it seeks business from parties in need of its screening and monitoring services (i.e., throughout the United States), so that it can readily fulfill its contracts.

18.     The purpose of the faxes at issue is to solicit Plaintiff and others to enter into such business relationships, thereby "forging new partnerships".

19.     The faxes expressly stated that they did not contemplate that Plaintiff would be employed by Defendant, but would have a contractual relationship with it.

20.     The business relationship contemplated by the faxes requires Plaintiff to:

    a.     Have or hire personnel that are certified to provide specialized certifications, such as Breath Alcohol Technicians and urine specimen collectors trained to comply with Department of Transportation requirements, and medical examiners trained and registered on the national registry of certified medical examiners.

    b.     Indemnify and hold harmless Defendant for acts and omissions;

    c.     Enter into a noncompetition provision;

    d.     Undertake confidentiality obligations beyond those required in the medical profession;

    e.     Maintain insurance.

21.     On information and belief, as part of FSSolutions' business, it sends or causes to

4

send faxes in the form of Exhibits A-B to healthcare providers in the United States.

22.     Exhibits A-B inform the recipient of the services and products  FSSolutions offers and how a relationship with  FSSolutions can be of mutual benefit.

23.     Discovery may reveal the transmission of additional faxes as well.

24.     Defendant FSSolutions  is responsible for sending or causing the sending of the faxes.

25.     Defendant FSSolutions, as the entity whose products or services were advertised  in the faxes, derived economic benefit from the sending of the faxes.

26.     Defendant  FSSolutions either negligently or wilfully violated the rights of Plaintiff and other recipients in sending the faxes.

27.     Plaintiff had no prior relationship with Defendants and had not authorized the sending of fax advertisements to Plaintiff.

28.     On information and belief, the fax attached hereto was sent as part of a mass broadcasting of faxes.

29.     The fax does not contain an "opt out" notice that complies with 47 U.S.C. § 227.

30.     The TCPA provides for affirmative defenses of consent or an established business relationship.  Both defenses are conditioned on the provision of an opt out notice that complies with the TCPA.  *Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013); *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013).

31.     On information and belief, Defendants have transmitted similar unsolicited fax advertisements to at least 40 other persons in Illinois.

32.     There is no reasonable means for Plaintiff or other recipients of Defendants' unsolicited advertising faxes to avoid receiving illegal faxes.  Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

## COUNT I – TCPA

33.     Plaintiff incorporates ¶¶ 1-32.

5

34.     The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

35.     The TCPA,  47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**

**(A)  an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**

**(B)  an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**

**(C)  both such actions.**

**If the Court finds that the Defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

36.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.  Furthermore, Plaintiff's statutory right of privacy was invaded.

37.     Plaintiff and each class member is entitled to statutory damages.

38.     Defendants violated the TCPA even if their actions were only negligent.

39.     Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

40.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with fax numbers (wherever located) (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of Defendant   FSSolutions requesting that the recipient enter into a business relationship with Defendant (d) and which did not contain an opt out notice as described in 47 U.S.C. § 227.

6

41.    The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class.

42.    There are questions of law and fact common to the class that predominate over  any questions affecting only individual class members.  The predominant common questions include:

    a.    Whether Defendants engaged in a pattern of sending unsolicited fax advertisements;

    b.    The manner in which Defendants compiled or obtained its list of fax numbers; and

    c.    Whether Defendants thereby violated the TCPA.

43.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

44.    Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

45.    A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

46.    Numerous courts have certified class actions under the TCPA.  *Holtzman v. Turza,* 08cv2014, 2009 WL 3334909,  2009 U.S. Dist. LEXIS 95620 (N.D.Ill. Oct. 14, 2009), *aff'd in part, rev'd in part, vacated in part,* 728 F.3d 682 (7th Cir. 2013); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.* 2015 IL 118644, 48 N.E.3d 1060; *American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540, 544 (6th Cir. 2014); *In re Sandusky Wellness Center, LLC,* 570 Fed.Appx. 437, 437 (6th Cir. 2014); *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016); *Sadowski v. Med1 Online, LLC,* 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill. May 27, 2008); *CE Design Ltd. v. Cy's Crabhouse North, Inc.,* 259 F.R.D. 135 (N.D.Ill.

2009); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.,* 679 F.Supp.2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Laboratory, Inc.,* 10cv1315, 2010 WL 4074379, 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010); *Hinman v. M&M Rental Center, Inc.,* 545 F.Supp.2d 802 (N.D.Ill. 2008); *G.M. Sign, Inc. v. Group C Communications, Inc.,* 08cv4521, 2010 WL 744262, 2010 U.S. Dist. LEXIS 17843 (N.D.Ill. Feb. 25, 2010); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La.App. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.,* 992 So.2d 510 (La.App. 2008); *Lampkin v. GGH, Inc.,* 146 P.3d 847 (Ok.App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.,* 203 Ariz. 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young,* 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.,* 293 Kan. 285, 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns, Inc.,* 306 S.W.3d 577 (Mo.App. 2010); *Lindsay Transmission, LLC v. Office Depot, Inc.,* 4:12cv221, 2013 WL 275568,  2013 U.S. Dist. LEXIS 9554 (E.D.Mo. Feb. 24, 2013).

47.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

a.     Actual damages;

b.     Statutory damages;

c.     An injunction against the further transmission of unsolicited fax advertisements;

d.     Costs of suit;

e.     Such other or further relief as the Court deems just and proper.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

48.     Plaintiff incorporates ¶¶ 1-32.

49.     Defendants engaged in unfair acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertisements to Plaintiff and others.

50.     Unsolicited fax advertising is contrary to the TCPA and also Illinois law.  720 ILCS 5/26-3(b) makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

51.     Defendants engaged in an unfair practice and an unfair method of competition by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of their advertising.

52.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

53.     Defendants engaged in such conduct in the course of trade and commerce.

54.     Defendants' conduct caused recipients of their advertising to bear the cost thereof. This gave Defendants an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail.  For example, an advertising campaign targeting one million recipients would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting.  The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink.  "Receiving a junk fax is like  getting junk mail with the postage due". Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

55.     Defendants' shifting of advertising costs to Plaintiff and the class members in this manner makes such practice unfair.  In addition, Defendants' conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

56.     Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

57.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date three years prior to the filing of this action,  (c) were sent faxes by or on behalf of Defendant   FSSolutions requesting that the recipient enter into a business relationship with Defendant (d) and which did not

contain an opt out notice as described in 47 U.S.C. § 227.

58.     The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class.

59.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

  a.     Whether Defendants engaged in a pattern of sending unsolicited fax advertisements; and

  b.     Whether Defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

60.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

61.     Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

62.     A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

63.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

  a.     Actual damages;

  b.     An injunction against the further transmission of unsolicited fax advertising;

  c.     Attorney's fees, litigation expenses and costs of suit;

  d.     Such other or further relief as the Court deems just and proper.

## COUNT III – CONVERSION

64.     Plaintiff incorporates ¶¶ 1-32.

65.     By sending Plaintiff and the class members unsolicited faxes, Defendants converted to their own use ink or toner and paper belonging to Plaintiff and the class members.

66.     Immediately prior to the sending of the unsolicited faxes, Plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

67.     By sending the unsolicited faxes, Defendants appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable.  Such appropriation was wrongful and without authorization.

68.     Defendants knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

69.     Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose.   Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

70.     Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

71.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date five years prior to the filing of this action, (c) were sent faxes by or on behalf of Defendant   FSSolutions requesting that the recipient enter into a business relationship with Defendant (d) and which did not contain an opt out notice as described in 47 U.S.C. § 227.

72.     The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class.

73.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions

include:

        a.      Whether Defendants engaged in a pattern of sending unsolicited fax advertisements; and

        b.      Whether Defendants thereby converted the property of Plaintiff.

74.      Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

75.      Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

76.      A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

77.      Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

        a.      Actual damages;

        b.      An injunction against the further transmission of unsolicited fax advertising;

        c.      Costs of suit;

        d.      Such other or further relief as the Court deems just and proper.

## COUNT IV – TRESPASS TO CHATTELS

78.      Plaintiff incorporates ¶¶ 1-32.

79.      Plaintiff and the class members were entitled to possession of the equipment they used to receive faxes.

80.      Defendants' sending Plaintiff and the class members unsolicited faxes interfered

with their use of the receiving equipment and constitutes a trespass to such equipment. *Chair King v. Houston Cellular*, 95cv1066, 1995 WL 1693093 at *2 (S.D. Tex. Nov. 7, 1995) (denying a motion to dismiss with respect to Plaintiff's trespass to chattels claim for unsolicited faxes), vacated on jurisdictional grounds 131 F.3d 507 (5th Cir. 1997).

81.     Defendants acted either intentionally or negligently in engaging in such conduct.

82.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes.

83.     Defendants should be enjoined from continuing trespasses.

## CLASS ALLEGATIONS

84.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date five years prior to the filing of this action, (c) c) were sent faxes by or on behalf of Defendant   FSSolutions requesting that the recipient enter into a business relationship with Defendant (d) and which did not contain an opt out notice as described in 47 U.S.C. § 227.

85.     The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class.

86.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

      a.     Whether Defendants engaged in a pattern of sending unsolicited fax advertisements; and

      b.     Whether Defendants thereby committed a trespass to chattels.

87.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

88.     Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

89.     A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

90.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

     a.     Actual damages;

     b.     An injunction against the further transmission of unsolicited fax advertising;

     c.     Costs of suit;

     d.     Such other or further relief as the Court deems just and proper.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiff demands trial by jury.


*s/ Daniel A. Edelman*
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any  recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


_s/ Daniel A. Edelman_
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
       & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## <u>DOCUMENT PRESERVATION DEMAND</u>

Plaintiff hereby demands that Defendants take affirmative steps to preserve all transmission records, all documents that relate to identification of any putative class member (including name, address, and fax number) who was sent an advertising fax by or on behalf of defendants, any data, documents and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with the transmission of the faxes at issue, campaigns, accounts, sales or files associated with Plaintiff and any advertising fax broadcasts.  These materials are likely very  relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

<u>s/Daniel A. Edelman</u>
Daniel A. Edelman

16