IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DR. RICHARD L. THALMAN, d/b/a THALMAN CHIROPRACTIC & WELLNESS CENTER, on behalf of himself and all others similarly situated,<br><br>**Plaintiff,**<br><br>v.<br><br>FIRST HOSPITAL LABORATORIES, INC., d/b/a FSSOLUTIONS, and JOHN DOES 1-10,<br><br>**Defendants.** | Case No. 3:21-CV-543-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), as well as Illinois state law. Plaintiff Dr. Richard Thalman, d/b/a Thalman Chiropractic & Wellness Center, complains that he received two unsolicited faxes, totaling 19 pages, from Defendant First Hospital Laboratories, d/b/a FSSolutions ("FSSolutions"). (Doc. 1). His lawsuit, brought as a putative class action, alleges four counts: a claim under the TCPA; a claim under the Illinois Consumer Fraud Act ("IFCA"); conversion; and trespass to chattels. (*Id.*).

FSSolutions has now moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 14). FSSolutions argues the faxes it sent were not "unsolicited advertisements" under the TCPA, it did not engage in any unfair business practice or cause substantial injury under the IFCA, and Thalman

has not alleged more than a *de minimus* injury sufficient to state a claim for conversion or trespass to chattels. (*Id.*). Thalman filed a response in opposition (Doc. 16), and FSSolutions filed a reply (Doc. 17). For the reasons set forth below, the Court finds the faxes were not unsolicited advertisements under the TCPA.

## FACTUAL BACKGROUND

FSSolutions provides background checks, as well as employment and medical screening and monitoring services on a nationwide basis. (Doc. 1 at ¶ 13). As part of these services, FSSolutions conducts drug, alcohol, medical, and other testing of prospective employees and others. (*Id.* at ¶ 14). On its website, FSSolutions bills itself as "one of the largest privately held third-party administrators (TPA) of drug and alcohol testing in the country." (*Id.* at ¶ 15). The website further states: "With over 15,000 locations, FSSolutions has the largest collection site & provider network in the industry. We continue to expand our network by forging new partnerships every day. That way, no matter where you are, a site is never far away." (*Id.* at ¶ 16). In order to fulfill its contracts, FSSolutions enters into business relationships with medical providers in the areas where it seeks to offer screening and monitoring services. (*Id.* at ¶ 17).

Thalman is a chiropractic physician and a certified Department of Transportation (DOT) medical examiner located in Carbondale, Illinois, and doing business as Thalman Chiropractic and Wellness Center. Thalman received a fax from FSSolutions on May 27, 2021. (Doc. 1-1). The cover page of the fax, along with the sender information, stated: We would like to send our donors to you for occupational health services, such as physicals, drug screens, titers, and vaccinations. Not Solicitation – We would like to utilize your

services." (*Id.*). The next page was a letter from Melissa Gagnon, a Procurement Associate with FSSolutions. The letter explained that FSSolutions is a national TPA for a variety of workplace, staffing, and transportation accounts. (*Id.*). The company's clients include DOT truckers and traveling medical professionals with a need for occupational health services and on-site urine drug screening. FSSolutions stated that it received Thalman's information from the Quest Preferred Providers list, and they were interested in using Thalman's facility for services. (*Id.*). The fax included FSSolutions' provider agreement, instructions for submitting invoices to FSSolutions, and FSSolutions' schedule of fees it pays providers like Thalman for performing specific services. (*Id.*).

On June 2, 2021, Thalman received a second fax from FSSolutions. (Doc. 1-2). The fax contained the same cover page, but this time the letter from Ms. Gagnon requested confirmation that Thalman received the contract sent in the first fax. It further stated: "We would like to: 1. Add your site into our database as an option for our candidates to receive services or 2. Update your site profile in our database as we were recently informed that our services and pricing do not match what you offer." (*Id.*). It again included FSSolutions' provider agreement and service list. (*Id.*).

Five days later, Thalman filed this lawsuit. (Doc. 1). He claims generally that unsolicited fax advertising damages recipients in that it deprives them of their paper, ink, toner, and use of their fax machine. It also prevents fax machines from receiving and sending authorized faxes, causes wear and tear on fax machines, and requires labor to attempt to identify the source and purpose of the unsolicited faxes. (*Id.* at ¶ 2). With regard to the faxes at issue, Thalman alleges he did not authorize FSSolutions to send the

Page 3 of 10

faxes to him. (*Id.* at ¶ 27). The purpose of these faxes, he claims, was to solicit him to enter into a contractual business relationship. (Doc. 1 at ¶ 18). He further alleges, on information and belief, that FSSolutions sends these faxes as part of a mass broadcasting of faxes to healthcare provides across the United States. (*Id.* at ¶ 21). Thalman claims FSSolutions derived economic benefit from sending the faxes and negligently or willfully violated his rights. (*Id.* at ¶¶ 25-26). As relief, Thalman seeks actual damages, statutory damages, injunctive relief, and attorney fees and costs.

## LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to evaluate the adequacy of a complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013). Taken together, the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted).

#### DISCUSSION

FSSolutions moves to dismiss the Complaint for several reasons. First, it argues Thalman has failed to state a claim under the plain language of the TCPA when the faxes were not "unsolicited advertisements." Second, it claims the faxes were excluded from the prohibition on "unsolicited advertisements" under FCC interpretations of the TCPA. Finally, FSSolutions asserts Thalman has failed to state a claim under the Illinois Consumer Fraud Act and under Illinois common law.

**I.     Thalman Has Failed to State a Claim Under the TCPA Because the Faxes Were Not Unsolicited Advertisements**

The TCPA, 47 U.S.C. § 227(b)(1)(C), prohibits the use of a fax machine to send an unsolicited advertisement. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). "[T]he TCPA only prohibits unsolicited *advertisements*, not any and all faxes even if sent for a commercial purpose." *Mauthe v. Optum Inc.*, 925 F.3d 129, 133 (3d Cir. 2019) (emphasis in original). As "the TCPA is a remedial statute," courts "must liberally construe [it] in favor of consumer protection." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 967 (7th Cir. 2020).

FSSolutions argues the May 27 and June 2 faxes do not violate the TCPA because they are not "unsolicited advertisements" under the plain language of the TCPA, 47 U.S.C. §227(a)(5). That is, they do not promote the "commercial availability or quality

of any property, goods or services" of FSSolutions. Instead, they request information about medical services provided by Thalman and offer to pay him for providing said medical services. FSSolutions likens the faxes to those requesting the recipient's participation in a survey in exchange for payment, which several courts in the Seventh Circuit have determined are not unsolicited advertisements. *See, e.g., Advanced Dermatology v. Fieldwork, Inc.*, 550 F. Supp. 3d 555 (N.D. Ill. 2021).

Thalman, on the other hand, asserts the faxes are more like those sent by pharmaceutical and medical device distributors encouraging recipient doctors to prescribe or recommend the sender's drugs or devices to the recipient's own patients. *See, e.g., Optum*, 925 F.3d at 133 (TCPA applies to "a fax sent to a doctor encouraging the doctor to prescribe a particular drug to the doctor's patients who, rather than the doctor, are the likely purchasers of the sender's product").

Thalman also cites *AL & PO Corp. v. Med-Care Diabetic Medical Supplies, Inc.*, No. 14 C 01893, 2014 WL 6999593 (N.D. Ill. Dec. 10, 2014), where a fax sent to a medical supply retailer identified the recipient as "a possible candidate for our affiliate/subcontractor program" and listed various goods and services that the sender could provide for the recipient's patients. *Id.* at *1. In considering whether the fax constituted an advertisement, the Northern District of Illinois noted that the TCPA "requires a look at the precise information included in the fax, such as descriptions of the availability or quality of products." *Id.* at *3. There was no doubt, in that case, that the fax trumpeted the availability of the fax-sender's goods and services, listing 12 specific examples of products. *Id.* The court further rejected the defendant's argument that the fax

Page 6 of 10

was not an advertisement simply because the recipient was not the ultimate purchaser. *Id.* Observing that the defendant desired to cultivate a base of subcontractors so it could sell its goods and services through those subcontractors, the court found that this type of commercial exchange fit naturally within the understanding of the term "advertising." *Id.*

By contrast, the faxes sent by FSSolutions did not encourage Thalman to purchase anything, they did not ask him to recommend any products or services to his patients, nor did they ask him to serve as a middleman between FSSolutions and Thalman's patients. They also did not advertise the "commercial availability" of FSSolutions' goods or services; instead, they "[sought] to *obtain* something . . . That means they are outside the scope of the TCPA." *Fischbein v. Olson Rsch. Grp., Inc.*, 959 F.3d 559, 566 (3d Cir. 2020) (Jordan, J., dissenting). In *Fischbein*, the faxes at issue offered compensation to the recipients in exchange for their completion of market research surveys. *Id.* at 561. Judge Jordan, in dissent, examined the word "available" within "commercially available," which means "present or ready for immediate use." *Id.* at 566. He concluded that "[f]axes offering compensation in exchange for the completion of surveys are not advertising anything that is 'present or ready for immediate use. The very fact that a fax seeks to obtain something means that it is communicating the exact opposite of availability – it is stating a need for something not readily available to the sender." *Id.*

Likewise, here, FSSolutions is not advertising anything present or ready for immediate use. Rather, the faxes were an invitation to partner with FSSolutions to provide medical services to its customers in the area. In other words, the faxes were

"stating a need for something not readily available to the sender"—Thalman's medical services.

The Northern District of Illinois recently addressed the argument that an invitation to "do business" with the sender of a fax is an advertisement. *See Advanced Dermatology v. Fieldwork, Inc.*, 550 F. Supp. 3d 555, 563 (N.D. Ill. 2021). There, the defendant sent the plaintiff a fax with an invitation to participate in a research study in exchange for $200 compensation. *Id.* at 559. The fax further provided a phone number to call if interested. *Id.* Another fax sent a couple of months later to a second plaintiff offered $425 for completing additional market research. *Id.* at 560. The plaintiffs brought putative class actions claiming the faxes violated the TCPA. *Id.* In granting the defendant's motion to dismiss, the court held that the faxes, on their face, were not "unsolicited advertisements." The court found that, while faxes soliciting participation in research studies, inviting a commercial relationship, or presenting an opportunity to do business may be a nuisance, they do not fall within the TCPA's prohibition unless they "advertis[e] the commercial availability or quality of any property, goods, or services." *Id.* at 563. "[I]n the absence of any promotion of a commercially available good or service, a mere nexus between the faxes and [defendant's] commercial success is not enough." *Id.* (citing *Optum*, 925 F.3d at 133 ("The TCPA only prohibits unsolicited *advertisements*, not any and all faxes even if sent for a commercial purpose. . . . After all, a commercial entity takes almost all of its actions with a profit motivation.") (emphasis in original).

Here, the May 27, 2021 fax described FSSolutions as a TPA for workplace, staffing, and transportation accounts. As such, it had a need for occupational health services, urine

collection, and the occasional need for on-site drug collection for pre-employment screening, if Thalman offered such services. The fax then included specifications for its testing requirements, requested that Thalman confirm his physical location or billing address he would prefer on the agreement, and requested that he provide proof of liability insurance and various certifications based on the services he offers. At the end, the fax states: "I have attached our Provider Agreement and service list. Please complete, add your pricing and return to me ASAP so we can add you to our database." The attached fee schedule then provided the price FSSolutions would pay the provider for each service. For example, for each urine collection done as part of a drug screening, FSSolutions would pay the provider $15, unless the provider specified otherwise.

Because the faxes did not advertise the commercial availability or quality of any property, goods, or services, but rather sought to add Thalman to a database so that FSSolutions' clients could use *his* services, the Court finds the faxes do not constitute unsolicited advertisements within the meaning of the TCPA. *See* 47 U.S.C. § 227(a)(5). True, FSSolutions may ultimately receive some commercial benefit if Thalman were to agree to become a provider for FSSolutions. That is, FSSolutions may be able to reach clients in the Carbondale, Illinois, area that it could not previously provide services for. But as noted by the Third Circuit in *Optum*, the TCPA does not prohibit any fax sent for a commercial purpose, only unsolicited *advertisements*. 925 F.3d at 133. And while a fax that invites a commercial relationship or presents an opportunity to do business may be annoying, that quality alone does not render it prohibited under the TCPA. *Advanced Dermatology*, 550 F. Supp. 3d at 563.

Under the plan language of the TCPA, the Court finds the faxes were not unsolicited advertisements. Thus, the Court need not determine whether the faxes are excluded from the prohibition on "unsolicited advertisements" under FCC interpretations of the TCPA. Furthermore, because the Court is dismissing the TCPA claim, it declines to exercise supplemental jurisdiction over the state-law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see also Podiatry in Motion, Inc. v. Interviewing Servs. of Am., LLC*, No. 20 C 3159, 2020 WL 5909063, at *3 (N.D. Ill. Oct. 5, 2020) (declining to exercise supplemental jurisdiction over conversion and trespass to chattels claims after dismissing TCPA claim). Thus, those claims are dismissed as well.

## Conclusion

For these reasons, the Motion to Dismiss filed by Defendant First Hospital Laboratories, d/b/a FSSolutions (Doc. 14) is **GRANTED**. The Complaint filed by Plaintiff Dr. Richard Thalman, d/b/a Thalman Chiropractic & Wellness Center (Doc. 1) is **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

DATED: March 29, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**